CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
AYAH SARSOUR (Bar No. 340280)
(E-Mail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
JOSE MARGARITO PLIEGO-PINEDA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSE MARGARITO PLIEGO-PINEDA,<br><br>　　　　Defendant. | Case No. 5:25-CR-00089-RGK<br><br>**MOTION TO DISMISS INDICTMENT PURSUANT TO FED. R. CRIM. P. 12(b) (STATUTE OF LIMITATIONS); MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS**<br><br>**Date: February 17, 2026**<br>**Time: 9:00 a.m.**<br>**Honorable Judge: R. Gary Klausner** |

　　　　Defendant Jose Margarito Pliego-Pineda ("Mr. Pliego-Pineda"), by and through his counsel of record, Deputy Federal Public Defender Ayah Sarsour, hereby moves the Court to dismiss the indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. The basis of dismissal is the government's failure to file the indictment before the expiration of the statute of limitations for the charged offense.

//

//

| | |
|---|---|
| 1 | This motion is based on the attached memorandum of points and authorities and |
| 2 | exhibits, the files and records in this case, and any additional evidence and argument that |
| 3 | may be presented at or before the hearing on this motion. |

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 14, 2026        By  /s/ *Ayah A. Sarsour*
                                                    AYAH A. SARSOUR
                                                    Deputy Federal Public Defender

## I. INTRODUCTION

Mr. Pliego-Pineda has lived in the United States since 2008. He has built his whole life in the United States. Three of his children are United States citizens, and his daughter is a Deferred Action for Childhood Arrivals (DACA) recipient. He has lived with his family in homes he has owned for over the past decade. He pays his federal taxes and owns bank accounts at federally insured bank institutions.

Mr. Pliego-Pineda was last deported from the United States on November 4, 2007. His love for his family and this country which he claims as his own compelled him to reenter and remain in the United States soon after. The government claims to have "found" Mr. Pliego-Pineda in the United States nearly 16 years and 22 days later on November 26, 2023, after the Riverside County Sheriff's Department (RSD) contacted the Law Enforcement Support Center (LESC) after an RSD deputy reviewed a notification indicating that Mr. Pliego was wanted by Immigration and Customs Enforcement (ICE). Dkt. No. 1, Compl. However, no substantive investigation occurred until on or about February 17, 2025, and a complaint was not filed until February 20, 2025. Dkt. No. 1, Compl. An indictment was not filed until March 21, 2025. Dkt. No. 23, Indict.

Mr. Pliego-Pineda's presence was known to the government well before these dates. As early as 2008, Mr. Pliego repeatedly provided both actual and constructive notice to the United States and affirmatively made himself available to federal authorities by maintaining known and ascertainable locations within the country Mr. Pliego-Pineda filed federal tax returns with valid W-2 forms (Ex. A (Tax Records)), renewed his driver's license (Ex. B (DMV Records)), his daughter filed U.S. Citizenship and Immigration Services (USCIS) Form I-821D (Ex. C (USCIS Form I-821D, Instructions and Application)), he owned property in the United States (Ex. D (Property Records)), and he maintained an active bank account at a federally insured institution (Ex. E (Bank Records)). The Department of Homeland Security ("DHS") has long had all the information and means it needed to locate and arrest Mr. Pliego-Pineda.

The statute of limitations is not a procedural technicality to be brushed aside by the exigencies of enforcement; it is a foundational pillar of due process. In the federal criminal justice system, this right is codified at 18 U.S.C. § 3282, which generally bars prosecution for non-capital offenses five years after the offense has been committed. The Supreme Court, in *United States v. Marion*, 404 U.S. 307 (1971), articulated the profound purpose of this limitation: to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. The Court should dismiss this action as time barred.

## II. FACTUAL BACKGROUND

Mr. Pliego-Pineda has resided openly and continuously in the United States since reentering immediately following his last removal on November 4, 2007. During the entire period following his return, including the full five year statute of limitations window applicable to 8 U.S.C. § 1326, Mr. Pliego-Pineda maintained stable residences, filed federal and state tax returns using valid employment documentation, held a California driver's license, owned real property, maintained federally insured bank accounts, and was directly connected to federal immigration systems through his daughter's DACA application.

### A. Federal Tax Filings and Employment Records Demonstrate Continuous Presence and Government Reporting

Mr. Pliego-Pineda filed federal income tax returns using valid W-2 wage statements, reflecting employment in the United States and continuous reporting to the Internal Revenue Service (IRS). Exhibit A contains copies of Mr. Pliego Pineda's federal and California income tax returns from tax year 2018 through 2024, all listing his residential address in San Jacinto, California and reporting wages from U.S. based employers. Federal tax filings necessarily require employers to submit corresponding W-2 forms to the Social Security Administration (SSA) and IRS, creating federal employment and address records directly associated with Mr. Pliego-Pineda during the

2

relevant period. *See* 26 U.S.C. §§ 6051, 6041 (requiring employer wage reporting to federal agencies). These records demonstrate that Mr. Pliego-Pineda affirmatively made his presence known to federal authorities well within the statute of limitations period following his 2007 removal.

### B. California Driver's License Renewal and DMV Records Provided Government Address Information

The California Department of Motor Vehicles (CDMV) issued and renewed Mr. Pliego-Pineda's driver's license on August 5, 2020, reflecting continued residence and identity verification within the United States. Exhibit B reflects a valid California driver license issued to Jose M. Pliego, listing his residential address in Jurupa Valley, California, and confirming lawful issuance by a state agency operating within federally regulated identification systems.

State DMV systems participate in federal information sharing platforms, including access through federal law enforcement databases used by the DHS and ICE. Renewal of a driver's license requires in person identity verification and proof of residency, thereby providing the government with updated location data well after Mr. Pliego-Pineda's return and long before his alleged "found in" date.

### C. DACA Application for Mr. Pliego Pineda's Daughter Required Disclosure of Residence and Continuous Presence

Mr. Pliego-Pineda's daughter, Dulce, applied for DACA using USCIS Form I 821D. The DACA instructions expressly require applicants to submit documentation establishing continuous residence in the United States since June 15, 2007, including rent receipts, utility bills, and other records connecting the applicant to a specific address. Ex. C.

The DACA application submitted by Mr. Pliego-Pineda's daughter listed the family residence as 6130 Camino, the same address registered to and owned by Mr. Pliego-Pineda. This application was processed by USCIS, an agency within the DHS,

3

thereby placing Mr. Pliego-Pineda's address and household composition directly within DHS databases during the relevant time period.

Because USCIS requires proof of residence and household continuity, and the instructions explicitly allow such proof to come from a parent, and because DACA recipients do not have derivative citizenship, it is a reasonable and logical inference that their parents are not citizens. Accordingly, the government necessarily received documentation linking Mr. Pliego-Pineda to that address during the adjudication of his daughter's DACA request. DHS therefore had direct access to information establishing Mr. Pliego-Pineda's presence and fixed location in the United States during the statute of limitations period.

**D.  Property Ownership Demonstrates Fixed and Traceable Residence and Was Provided**

Mr. Pliego-Pineda purchased and owned the residence located at 6130 Camino, Riverside County, pursuant to a purchase agreement dated August 7, 2011. Ex. D.

That same address was later listed on his daughter's DACA application submitted to USCIS Services, an agency within the DHS. Under USCIS Form I 821D instructions, applicants must submit documentation establishing continuous residence in the United States since June 15, 2007.

Because the DACA application required proof linking the applicant to 6130 Camino, DHS necessarily received documentation confirming that Mr. Pliego-Pineda and his family resided there during adjudication. This, together with publicly recorded property ownership, places his residence squarely within government records during the statute of limitations period. Mr. Pliego-Pineda's ownership and residence at 6130 Camino, corroborated by DHS records, demonstrates a fixed, verifiable, and publicly traceable location, showing that he lived openly and did not conceal himself from authorities for over a decade.

//

//

**E. Federally Insured Bank Account Demonstrates Continuous Presence and Government Traceability**

Mr. Pliego-Pineda has maintained an active deposit account with JPMorgan Chase Bank, N.A. since May 3, 2016. Exhibit E reflects that Mr. Pliego-Pineda is the sole owner of a Chase Total Checking account opened on May 3, 2016, and continuously maintained through at least January 14, 2026, with a current and average balance reported by the bank. Ex. E.

To open and maintain a bank account at a federally insured financial institution, an individual must provide identity documentation and a physical residential address pursuant to federal "Know Your Customer" and anti-money laundering requirements enforced by the U.S. Department of the Treasury and federal banking regulators. *See* 31 U.S.C. § 5318(l); 31 C.F.R. § 1020.220 (requiring customer identification programs for banks). Chase Bank is a federally insured institution subject to ongoing federal reporting and regulatory oversight.

Mr. Pliego-Pineda's maintenance of a federally regulated bank account since 2016 placed his identity and residential information within systems subject to federal oversight during the statute of limitations period following his 2007 removal. These records further demonstrate that Mr. Pliego-Pineda did not conceal himself from government authorities but instead engaged in routine financial activity that required disclosure of his identity and location to institutions operating under federal regulatory frameworks.

When viewed in conjunction with his federal tax filings, state issued driver's license, ownership of real property, and DHS adjudicated DACA household records, Mr. Pliego-Pineda's longstanding banking relationship further establishes that the government either knew or, through reasonable diligence, should have known of his presence and location in the United States well before the alleged "found in" date asserted by the government.

5

## III. ARGUMENT

The statute of limitations for a violation of 8 U.S.C. § 1326 is five years. 18 U.S.C. § 3282; *United States v. Ortiz-Villegas*, 49 F.3d 1435 (9th Cir. 1995). The statute begins to run when the offense is complete. *United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir. 1999). For offenses charging that a defendant has been "found in" the United States after unlawful reentry, the offense is complete when the defendant is considered "found." *Id.*; *United States v. Zamudio*, 787 F.3d 961, 965 (9th Cir. 2015). The Ninth Circuit has held that a defendant can be considered "found"—thus completing the offense and starting the statute of limitations—when he is actually "discovered and identified" by immigration authorities. *Id.*

The Ninth Circuit has left open the question of whether the "constructive knowledge" by immigration officials can also trigger the limitations period. *Zamudio*, 787 F.3d at 965 ("[W]e have not addressed whether such discovery and identification must be based on the government's actual knowledge or can instead be proven under a constructive knowledge theory."). Indeed, the Ninth Circuit has expressly reserved that question. *See id.*; *United States v. Ortiz-Villegas*, 49 F.3d 1435, 1437 (9th Cir. 1995); *United States v. Valadez-Munoz*, 773 F. App'x 411 (9th Cir. 2019).

Other circuit courts, however, have adopted the "constructive-knowledge" theory, holding that the statute begins to run whenever "immigration authorities could have, through the exercise of diligence typical of law enforcement authorities, discovered the violation." *United States v. Gomez*, 38 F.3d 1031 (8th Cir. 1994). The Third, Eighth, and Eleventh Circuits all agree that the limitations period begins to run the moment immigration authorities could have discovered defendant using normal law enforcement tools. *See id.* (stating that the limitations period runs when "the government is in possession of all necessary information and means"); *United States v. DiSantillo*, 615 F.2d 128, 135 (3d Cir.1980) (holding that the statute of limitations begins to run when immigration authorities have "sufficient opportunities to discover [defendant's] offense"); *United States v. Clarke*, 312 F.3d 1343, 1348 (111th Cir. 2002) (analyzing

whether the INS could have discovered the defendant "through the exercise of diligence typical of law enforcement authorities.").[1]

The "constructive knowledge" approach of the Third, Eighth, and Eleventh Circuits is well founded in the policy behind limitations periods. The purpose of the statute of limitations is to "balance the government's need for sufficient time to discover and investigate the crime against the defendant's right to avoid perpetual jeopardy for offenses committed in the distant past." *DiSantillo*, 615 F.2d 128, 135 (3rd Cir. 1980) (internal quotations and citations omitted); *see also United States v. Marion*, 404 U.S. 307, 321 (1971) ("Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself."). As the Eighth Circuit recognized, "where the government possesses all the necessary information, but negligently fails to act upon it for five years, the injury suffered by the sovereign pales in comparison to the accused's right to repose." *Gomez*, 38 F.3d at 1037.

The Court should apply the constructive-knowledge approach employed by the Third, Eighth, and Eleventh Circuits. Indeed, this case illustrates the importance of a defendant's "right to repose" where the government has failed to act upon available information. Mr. Alvarez has lived in the United States since approximately 2008. The Court should find Mr. Alvarez had a "right to avoid perpetual jeopardy" for the reentry offense he committed over fifteen years ago.

---

[1] The Fifth and Tenth Circuit also appear to be in accord. *United States v. Bencomo-Castillo*, 176 F.3d 1300 (10th Cir. 1999) (noting that "the government must exercise diligence typical of law enforcement authorities to find prior deportees") (internal quotations omitted); *United States v. Santana-Castello*, 74 F.3d 593, 598 (5th Cir. 1996) (holding that defendant had not established constructive knowledge because he had not established that "awareness of his presence [could] be reasonably attributed" to immigration officials). In contrast, the Fourth and Seven Circuits have rejected the constructive knowledge approach. *United States v. Uribe-Rios*, 558 F.3d 347, 354 (4th Cir. 2009); *United States v. Are*, 498 F.3d 460, 462 (7th Cir. 2007).

7

### A. DHS Possessed the Information and Means to Discover Mr. Pliego-Pineda Years Before the Charged "Found In" Date

Whether constructive knowledge exists depends on the particular facts of the case, including whether immigration authorities possessed both the information and investigative tools necessary to identify the defendant earlier. *Gomez*, 38 F.3d at 1037; *Clarke*, 312 F.3d at 1348. This case parallels *Gomez* because DHS had direct access to multiple sources confirming Mr. Pliego-Pineda's residence at 6130 Camino. In *Gomez*, the defendant submitted fingerprints under a false name shortly after unlawful reentry, and the court held that the statute of limitations began to run when fingerprint comparison results reasonably should have been available, even though INS did not link him to his prior deportation until years later. 38 F.3d at 1033, 1038. Similarly, Mr. Pliego-Pineda's ownership of 6130 Camino, his daughter's DACA application listing that address, and DHS adjudicated records establishing household continuity together provided the government with the information and investigative means necessary to locate him.

Unlike *Clarke*, where no immigration screening existed in state pretrial detention facilities, 312 F.3d at 1348, or *Ramirez-Nunez*, where IRS filings alone did not trigger constructive knowledge, 2017 WL 11582499, at *6, DHS here had multiple corroborating sources. These included county and state property records, DMV records reflecting his driver's license and renewals, federally regulated bank account records subject to anti–money laundering requirements, and DACA adjudication documents linking his daughter to his household. Collectively, these sources placed Mr. Pliego-Pineda's residence squarely within government records and publicly traceable systems well before November 26, 2023.

Mr. Pliego-Pineda maintained a California driver's license and renewed it periodically, placing his identity and residence within state databases routinely accessed by federal authorities through interagency platforms. DHS ultimately located him using DMV records, and the same investigative tools were available years earlier. He also maintained a checking account at JPMorgan Chase Bank, N.A. beginning in May 2016.

8

Banks are federally regulated and subject to mandatory customer identification requirements under Section 326 of the USA PATRIOT Act, 31 U.S.C. § 5318(l), and implementing regulations, 31 C.F.R. § 1020.220(a)(2). Customers provide identifying information including name, address, date of birth, and taxpayer identification number. Unlike IRS data, banking records exist within federal anti–money laundering systems designed to ensure traceability.

Taken all together, property records, DMV records, DACA adjudication documentation, and federally regulated banking information provided DHS with multiple independent avenues to identify Mr. Pliego-Pineda. Just as in *Gomez*, the government possessed both the information and investigative tools necessary to locate him, demonstrating that he lived openly at a verifiable address and did not conceal himself from authorities, establishing constructive knowledge during the statute of limitations period.

**B.     The Statute of Limitations Began to Run Years Before the Indictment Was Filed**

Under the constructive knowledge approach adopted by the Third, Eighth, and Eleventh Circuits, the statute of limitations begins when immigration authorities could have discovered the defendant through reasonable diligence using ordinary investigative tools. *Gomez*, 38 F.3d at 1037; *DiSantillo*, 615 F.2d at 135; *Clarke*, 312 F.3d at 1348.

Here, DHS possessed the information and the means to discover Mr. Pliego-Pineda no later than 2016, and likely earlier, through DHS adjudicated DACA records tied to his residence, state DMV databases, and federally regulated banking identification systems. Yet the government waited until 2025 to file a criminal complaint and indictment.

Where the government possesses the tools to discover the alleged offense but fails to act for years, prosecution violates the defendant's right to repose and the core purpose of statutes of limitations. *Gomez*, 38 F.3d at 1037; *Marion*, 404 U.S. at 321.

Accordingly, this Court should adopt the constructive knowledge approach and hold that the statute of limitations began to run well before the government-initiated

9

prosecution. Because the indictment was filed more than five years after DHS could have discovered Mr. Pliego-Pineda through reasonable diligence, the charge under 8 U.S.C. § 1326 is time barred and must be dismissed.

## IV. CONCLUSION

Mr. Pliego-Pineda respectfully requests that the Court dismiss the indictment as time-barred.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 14, 2026        By  /s/ Ayah A. Sarsour
AYAH A. SARSOUR
Deputy Federal Public Defender

## **CERTIFICATE OF COMPLIANCE**

I, Ayah A. Sarsour, counsel of record for Mr. Jose Margarito Pliego-Pineda, certify that this brief contains 3023 words, which complies with the world limit of L.R. 11-6.1.

DATED: January 14, 2026        By  /s/ AYAH A. SARSOUR
AYAH A. SARSOUR
Deputy Federal Public Defender

10